[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-12496

Non-Argument Calendar

————————————————

DAVID A. BALL,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:22-cv-01456-LSC

————————————————

Before JORDAN, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant David Ball appeals the district court's order affirming the Commissioner of the Social Security Administration's (Commissioner) denial of his application for supplemental security income (SSI). Ball argues that the Administrative Law Judge (ALJ) failed to provide any rationale for her rejection of the functional limitations documented by Nurse Practitioner (NP) Cherie Keahey and neglected to state her consideration of the "supportability" of Dr. June Nichols's opinion. After careful review, we affirm.

## I.

Ball filed an SSI application on June 9, 2020, alleging a disability onset date of June 9, 2020. His disability report stated that the bulging discs in his spine limited his ability to work. Ball's disability benefits claim was denied initially and on reconsideration. Ball then requested and received a hearing before an ALJ.

The Social Security regulations outline a "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). If the ALJ determines that the claimant is or is not disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4). First, if a claimant performs "substantial gainful activity," he is not disabled. *Id.* § 416.920(a)(4)(i), (b). Second, if the claimant has no impairment or combination of impairments that significantly limits his ability

to work, he is not disabled. *Id.* § 416.920(a)(4)(ii). Third, if the claimant's impairment meets or equals the severity of one of the Social Security regulations' listed impairments, he is considered categorically disabled. *Id.* § 416.920(a)(4)(iii). Fourth, based on a residual functional capacity (RFC) assessment, if a claimant can still do their past work, they are not disabled. *Id.* § 416.920(a)(4)(iv). Fifth, considering their RFC, age, education level, and work experience, if a claimant cannot do his past work but can make an adjustment to other work, he is not disabled. *Id.* § 416.920(a)(4)(v).

The ALJ issued a written decision on November 22, 2021. At step one of the sequential evaluation, the ALJ found that Ball had not engaged in substantial gainful activity since the alleged onset date of June 9, 2020. At step two, the ALJ found that Ball's severe impairments of degenerative disc disease, depression, and obesity limited his ability to work. At step three, the ALJ concluded that none of Ball's impairments met the severity threshold of any of those listed in the applicable regulations.

At step four, based on the entire record, the ALJ determined that Ball had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with various exceptions based on his mental and physical capabilities. Regarding Ball's back pain, the ALJ reviewed objective evidence and provided written explanations for the medical opinions and prior administrative medical findings in the record. But the ALJ did not directly address statements from NP Cherie Keahey based on Ball's visits with her in November and December 2019. During the November 2019 visit, NP Keahey documented a

plan for Ball's back pain, which involved adopting a low-sodium and low-fat diet, walking daily for twenty to thirty minutes, "no lifting, pushing, or pulling" anything greater than ten pounds, taking the prescribed medication, and going to receive x-rays on his lumbar back within three weeks. The ALJ only referenced Ball's visits with NP Keahey when discussing the onset of his symptoms, stating that records indicated that he reported intermittent back pain that ranked a seven out of ten and moderate depression symptoms prior to his disability onset date.

Regarding Ball's mental health, the ALJ considered medical record evidence from state psychological consultants, a licensed social worker, a psychiatrist, and a clinical psychologist, Dr. June Nichols. As relevant here, the ALJ found that Dr. Nichols's opinion that Ball had severe limitations due to his psychological symptoms was unpersuasive because the opined limitations were very severe considering Dr. Nichols's findings that Ball had adequate general knowledge; good judgment and insight; could understand, remember, or carry out short simple instructions; and maintained socially appropriate behavior.

At step five, the ALJ relied on testimony by a vocational expert that an individual with Ball's RFC, age, education, and experience could work as a filters assembler, poly packer and heat sealer, and final inspector, jobs which existed in significant numbers in the national economy. Accordingly, the ALJ found Ball not disabled.

Ball then requested that the Appeals Council review the ALJ's decision. The Appeals Council denied Ball's request, making

24-12496                Opinion of the Court                5

the ALJ's decision the final decision of the Commissioner. Ball then filed a complaint for judicial review in the district court, and the district court affirmed the ALJ's decision. Ball timely appealed.

## II.

We review the ALJ's decision as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review Social Security appeals to determine whether the Commissioner's decision was supported by substantial evidence and based on correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). To be supported by substantial evidence, there must be "more than a scintilla" and "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). We review de novo the legal principles applied by the Commissioner. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024).

## III.

Ball advances two arguments on appeal. First, he argues that NP Keahey's functional limitation that Ball could lift, push, or pull no more than ten pounds was a medical opinion, and the ALJ erred by failing to address it. Second, Ball argues that the ALJ erred in failing to address the "supportability" of Dr. Nichols's opinion. We address each in turn.

Both claims involve step four of the sequential evaluation. At this step, the ALJ must ascertain the claimant's RFC, which is

"an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) (quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The ALJ must account for "all relevant medical and other evidence" and "state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320–21 (11th Cir. 2021) (quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1).

A "medical opinion" is "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain abilities to perform the physical and mental demands of work provided in the regulations. 20 C.F.R. § 416.913(a)(2). In contrast, "other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimaint's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 416.913(a)(3).

An ALJ must consider any submitted medical opinion or prior administrative medical finding using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.* § 416.920c(a), (c). But the regulations do not require the same for other medical evidence. *Id.* The "most important" factors for evaluating the persuasiveness

of a medical opinion are supportability and consistency, so the ALJ must explain how she considered those two factors. *Id.* § 416.920c(b)(2).

Applicable here, "supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). The ALJ "will articulate how [the ALJ] considered the medical opinions and prior administrative medical findings in [the claimant's] claim . . . ." *Id.* § 416.920c(a). But "there are no magic words" that the ALJ must use to state the weight given to medical opinions or the reasons for discounting them. *Raper*, 89 F.4th at 1276 n.14.

First, the ALJ did not err by not analyzing the persuasiveness of NP Keahey's November and December 2019 treatment notes because they were not "medical opinions" under 20 C.F.R. § 416.913(a)(2). The lifting, pushing, and pulling limitations were not "medical opinions" because they did not address Ball's ability to perform demands of work "despite [his] impairment(s)." *See id.* They addressed activities Ball should not engage in at all, not what he could still do in a work context. And the lifting, pushing, and pulling limitations were just one of many treatment-plan recommendations for Ball's back pain, which also included taking the prescribed pain medication and muscle relaxant, receiving imaging of his lumbar back, and returning for a follow-up appointment after

imaging was complete. As NP Keahey's treatment notes are "other medical evidence," not a "medical opinion" as defined in the regulations, the ALJ did not have to evaluate their persuasiveness. *See* 20 C.F.R. § 416.920c.

Next, the ALJ properly considered the supportability of Dr. Nichols's opinion. The ALJ explained that Dr. Nichols's own findings of Ball's mental functioning did not support her medical opinion of severe mental limitations, thereby addressing the supportability. Specifically, the ALJ explained that Dr. Nichols's findings, including that Ball presented with an adequate fund of knowledge, appeared to have good judgment and insight, and could understand, remember, and carry out very short and simple instructions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness, did not support her opinion that Ball had such severe mental limitations that he could not maintain attention, concentration, or pace for periods of at least two hours, sustain an ordinary routine with special supervision, or interact with supervisors or coworkers. Although the ALJ never used the words "support" or "supportability" in her analysis, these "magic words" are not required. *See Raper*, 89 F.4th at 1276 n.14. The ALJ properly considered and articulated Dr. Nichols's opinion as the regulation required, and substantial evidence supports her decision.

## IV.

In sum, the ALJ did not err by not analyzing the persuasiveness of NP Keahey's November and December 2019 treatment

24-12496                Opinion of the Court                9

notes because they were not medical opinions as defined by the regulations. And the ALJ properly considered the supportability of Dr. Nichols's opinions by explaining that Dr. Nichols's own findings about Ball's mental functioning did not support her medical opinion of his severe mental limitations.

**AFFIRMED.**